UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

JENNIFER WORTHINGTON,
ALEXANDRA WORTHINGTON, and
MASSIMO TASSAN-SOLET,

                Plaintiffs,

      -v.-

JETSMARTER, INC., DAVID SHERIDAN,
and JOHN DOES 1-4,

                Defendants.

18 Civ. 12113 (KPF)

**OPINION AND ORDER**

------------------------------------------------------------

KATHERINE POLK FAILLA, District Judge:

    Plaintiffs are former customers of Defendant JetSmarter, Inc. ("JetSmarter"), a travel services company. In 2018, JetSmarter modified its membership agreement to remove some of the services that had been available to Plaintiffs in prior years. In response, Plaintiffs — and many other former JetSmarter members around the country — filed suit against JetSmarter and certain of its employees. Some former JetSmarter members settled their claims against JetSmarter in a class-wide arbitration in Florida. Plaintiffs here opted out of that class and seek to litigate their claims separately. However, as it has done in many other cases brought by former members, JetSmarter moves here to compel arbitration, relying on an arbitration provision in its Membership Agreement. For the reasons set forth in the remainder of this Opinion, Defendants' motion to compel arbitration is granted and the instant action is stayed.

# BACKGROUND[1]

## A. Factual Background

JetSmarter is a Florida-based corporation that purports to offer its members travel deals on private jets and helicopters. (Compl. ¶ 4). Plaintiffs are three citizens of the state of New York and former JetSmarter members. (*Id.* at ¶¶ 3, 8). In February 2016, after seeing advertising materials for JetSmarter, Plaintiffs contacted JetSmarter representative David Sheridan. (*Id.* at ¶ 7). Sheridan advised Plaintiffs that a JetSmarter membership included free flights, helicopter rides, and other transportation services. (*Id.*). Based in part on those representations, in May 2016, Plaintiffs Jennifer Worthington ("J. Worthington") and Massimo Tassan-Solet decided to purchase three "Smart Memberships." (*Id.* at ¶ 8). When they signed up, Plaintiffs paid $9,675 for each membership, plus an initiation fee of $3,500. (*Id.*).

A declaration submitted by Mikhail Kirsanov, the Chief Technology Officer of JetSmarter, explains the process by which Plaintiffs became JetSmarter members. (*See* Kirsanov Decl.). Plaintiffs each signed up for

---

[1] The facts contained in this Opinion are drawn from Plaintiffs' Complaint ("Compl." (Dkt. #1)); the Declaration of Jenna F. Gushue In Support of Defendants' Motion to Dismiss and Compel Arbitration ("Gushue Decl." (Dkt. #18)), including the exhibits thereto; the Declaration of Mikhail Kirsanov In Support of Defendants' Motion to Dismiss and Compel Arbitration ("Kirsanov Decl." (Dkt. #19)), including the exhibits thereto; and the Declaration Jenna E. Gushue In Further Support of Motion to Dismiss and Compel Arbitration ("Gushue Reply Decl." (Dkt. #24)), including the exhibits thereto.

For ease of reference, Defendants' Memorandum of Law in Support of Their Motion to Dismiss and Compel Arbitration is referred to as "Def. Br." (Dkt. #17); Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss and Compel Arbitration is referred to as "Pl. Opp." (Dkt. #22); and Defendants' Reply in Support of Their Motion to Compel Arbitration is referred to as "Def. Reply" (Dkt. #23).

JetSmarter's services through a two-step process. (*See id*.). *First*, in early 2016, Plaintiffs created profiles on the JetSmarter mobile application (or "app"). (*Id*. at ¶ 5). In the course of creating such profiles, Plaintiffs each toggled a button indicating their agreement to JetSmarter's "Terms of Use and Privacy Policy." (*Id*. at ¶¶ 3-6). These policies provided for mandatory binding arbitration of all disputes. (*Id*. at ¶ 6; Ex. 2-3).

*Second*, in May 2016, Plaintiffs each entered into a Membership Agreement (the "2016 Membership Agreement") with JetSmarter. (Kirsanov Decl. ¶¶ 7-9). When Plaintiffs submitted their payments for their JetSmarter memberships, they each clicked a checkbox next to the phrase "I ACCEPT TERMS AND CONDITIONS OF THE MEMBERSHIP AGREEMENT." (*Id*. at ¶ 10). The text of this phrase was embedded with a hyperlink to the 2016 Membership Agreement. (*Id*. at ¶ 11). Like the Terms of Use, the 2016 Membership Agreement also contains an arbitration provision, which states:

> Any claim or dispute between the parties and/or against any agent, employee, successor, or assign of the other, whether related to this Agreement, any of the Terms and Conditions or the relationship or rights or obligations contemplated herein, including the validity of this clause, shall be resolved exclusively by binding arbitration by the American Arbitration Association, under the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes then in effect, by a sole arbitrator. The place of arbitration shall be Broward County, Florida.

(*Id*. at ¶ 13; Ex. 7 at 10; Ex. 8 at 10; Ex. 9 at 10).

In May 2017, all three of Plaintiffs' memberships were automatically renewed. (Kirsanov Decl. ¶ 15). In March 2018, J. Worthington and Tassan-

Solet renewed their memberships after speaking with Sheridan, who represented to them that there would be no change in the services provided to them in the coming year. (Compl. ¶ 10; Kirsanov Decl. ¶ 17).[2] Before they were able to renew their memberships, Plaintiffs were again required to click on the checkbox next to the phrase "I ACCEPT TERMS AND CONDITIONS OF THE MEMBERSHIP AGREEMENT." (Kirsanov Decl. ¶¶ 17-20). This phrase was hyperlinked to JetSmarter's Membership Agreement in force at the time (the "2018 Membership Agreement"). (*Id.* at ¶ 21). The 2018 Membership Agreement has a provision titled "DISPUTE RESOLUTION," which contains an arbitration provision substantively identical to those in JetSmarter's 2016 and 2017 Membership Agreements. (*Id.* at ¶¶ 20-21; Ex. 13-14). Specifically, the Dispute Resolution provision in the 2018 Membership Agreement states:

> Any claim or dispute between the parties and/or against any agent, employee, successor, or assign of the other, whether related to this Agreement, any of the Terms and Conditions or the relationship or rights or obligations contemplated herein, including the validity of this clause, shall be resolved exclusively by binding arbitration by the American Arbitration Association,

---

[2] Plaintiff Alexandra Worthington attempted to renew her membership in 2018, but because her payment did not clear, her membership was not renewed. (Kirsanov Decl. ¶ 17). The 2017 Membership Agreement, which is the most recent Membership Agreement she entered with JetSmarter, also contains a provision titled "Dispute Resolution," which states, in relevant part:

> Any claim or dispute between the parties and/or against any agent, employee, successor, or assign of the other, whether related to this Agreement, any of the Terms and Conditions or the relationship or rights or obligations contemplated herein, including the validity of this clause, shall be resolved exclusively by binding arbitration by the American Arbitration Association, under the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes then in effect, by a sole arbitrator. The place of arbitration shall be Broward County, Florida.

(*Id.* at ¶ 16; Ex. 10 at 11).

4

> under the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes then in effect, which are deemed incorporated herein by reference. The place of arbitration shall be Broward County, Florida.

(Kirsanov Decl. ¶¶ 18-19; Ex. 11 at 10; Ex. 12 at 10).

Shortly after Plaintiffs J. Worthington and Tassan-Solet renewed their memberships in 2018, Plaintiffs found themselves unable to access many of the services that JetSmarter had previously provided to them. (Compl. ¶¶ 12-14). Plaintiffs communicated with Sheridan regarding the changes in their service, but soon realized that, contrary to Sheridan's representations, JetSmarter had in fact changed its business model and would no longer offer free flights. (*Id.* at ¶ 16). Thereafter, JetSmarter removed all of the benefits of Plaintiffs' membership, and despite Plaintiffs' demands, JetSmarter refused to return their payment. (*Id.* at ¶ 18).

**B.     Procedural History**

Plaintiffs filed the Complaint in this action on December 21, 2018, naming JetSmarter, David Sheridan, and four John Doe employees of JetSmarter as Defendants. (Dkt. #1). The Complaint alleges claims for breach of contract, violations of the implied covenant of good faith and fair dealing, unfair trade practices, respondeat superior, and fraud. (Compl. ¶¶ 20-47). On January 28, 2019, JetSmarter and Sheridan (collectively, "Defendants") requested leave to file a motion to dismiss the Complaint and to compel arbitration. (Dkt. #11). On February 1, 2019, the Court granted Defendants' request for leave and set a briefing schedule for Defendants' motion to dismiss

and compel arbitration. (Dkt. #13). Defendants moved to dismiss and compel arbitration on March 1, 2019. (Dkt. #16). Plaintiffs filed their opposition brief on May 3, 2019. (Dkt. #22). Defendants filed their reply brief on May 10, 2019. (Dkt. #23). Subsequent to filing their reply brief, Defendants filed five notices of supplemental authority. (Dkt. #26, 28, 29, 30, 31).

## DISCUSSION

**A.    Applicable Law**

The Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "FAA"), "reflects a liberal federal policy favoring arbitration agreements and places arbitration agreements on the same footing as other contracts." *Meyer* v. *Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017) (internal quotation marks and citations omitted). Section 2 of the FAA provides, "[a] written provision in … a contract … to settle by arbitration a controversy thereafter arising out of such contract … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 of the FAA allows a party to such an agreement to petition a district court for an order compelling arbitration where a counterparty "fail[s], neglect[s], or refus[es] … to arbitrate" under the terms of an arbitration agreement. *Id.* § 4. A court ruling on a petition to compel arbitration must decide two issues: [i] whether the parties agreed to arbitrate, and, if so, [ii] whether the scope of that agreement encompasses the claims at issue. *See Holick* v. *Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015).

6

In resolving a motion to compel arbitration, the court applies "a standard similar to that applicable for a motion for summary judgment." *Meyer*, 868 F.3d at 74 (internal quotations omitted). "[T]he court considers all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, and draws all reasonable inferences in favor of the non-moving party." *Id.* (internal quotation marks, alterations, and citations omitted). "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Bensadoun* v. *Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (citing 9 U.S.C. § 4). However, a party opposing arbitration may not satisfy this burden through "general denials of the facts on which the right to arbitration depends"; in other words, "[i]f the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Oppenheimer & Co., Inc.* v. *Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995).

**B.     Analysis**

    **1.     The Parties Formed a Valid Arbitration Agreement**

"The threshold question facing any court considering a motion to compel arbitration is whether the parties have indeed agreed to arbitrate." *Doctor's Assocs., Inc.* v. *Alemayehu*, 934 F.3d 245, 250 (2d Cir. 2019) (internal quotations and alterations omitted). The question is resolved with reference to state law. *See Meyer*, 868 F.3d at 73-74; *Bell* v. *Cendant Corp.*, 293 F.3d 563,

7

566 (2d Cir. 2002) ("Because an agreement to arbitrate is a creature of contract … the ultimate question of whether the parties agreed to arbitrate is determined by state law.").

Defendants contend that because the JetSmarter Membership Agreement contains a Florida choice-of-law provision, Florida law applies to the question of contract formation. (*See* Def. Br. 11-12; Kirsanov Decl., Ex. 10-12). In opposition, Plaintiffs contend that the Court should apply New York law because Plaintiffs have no connections to Florida and are asserting causes of action under New York law. (*See* Pl. Opp. 7-10).

In diversity of citizenship cases, a federal court deciding questions of conflict of laws must follow the rules prevailing in the state in which the court sits. *Klaxon Co.* v. *Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under New York law, "courts should not engage in any conflicts analysis where the parties included a choice-of-law provision in their contract." *Ministers & Missionaries Benefit Bd.* v. *Snow*, 26 N.Y.3d 466, 474 (2015). However, as the Second Circuit has noted, there is a logical flaw inherent in following a contractual choice-of-law provision before determining whether the parties have actually formed the contract in which the choice-of-law clause appears. *See Schnabel* v. *Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012) ("Applying the choice-of-law clause to resolve the contract formation issue would presume the applicability of a provision before its adoption by the parties has been established.").

Here, the Court need not decide which state's law applies, because the law of New York and Florida is substantially similar on the question of whether

8

the parties have formed an agreement to arbitrate. *See Schnabel*, 697 F.3d at 119 ("[N]either that court nor this one need resolve this typically thorny choice-of-law question, because both Connecticut and California apply substantially similar rules for determining whether the parties have mutually assented to a contract term."); *Bassett* v. *Electronic Arts Inc.*, No. 13 Civ. 4208 (MKB) (SMG), 2015 WL 1298644, at *4 n.4 (E.D.N.Y. Feb. 9, 2015) ("The Court need not resolve this dispute, to the extent one exists, because the parties have not identified any meaningful difference between the relevant laws of California and New York[.]"). Under both New York and Florida law, an arbitration agreement requires a manifestation of mutual assent to sufficiently definite contract terms. *See Matter of Express Indus. & Term. Corp.* v. *N.Y. State Dep't. of Transp.*, 93 N.Y.2d 584, 589 (1999) (Under New York law, "[t]o create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms."); *Kolodziej* v. *Mason*, 774 F.3d 736, 744 (11th Cir. 2014) (Under Florida law, "an enforceable contract requires mutual assent as to sufficiently definite essential terms.").

Plaintiffs contend that Defendants cannot prove that Plaintiffs manifested assent to the Membership Agreements. (*See* Pl. Opp. 10). They are wrong. Defendants have provided the Court with evidence sufficient to show that Plaintiffs indeed manifested assent to JetSmarter's Membership Agreements and, by extension, to arbitrate their disputes under those Agreements.

9

The Kirsanov Declaration explains that during the process of obtaining JetSmarter memberships, Plaintiffs indicated their assent to JetSmarter's Membership Agreement at least twice. *First*, when Plaintiffs registered on the JetSmarter app, they indicated assent to JetSmarter's terms of use by swiping a button next to the phrase "I agree to Terms of Use and Privacy Policy." (*See* Kirsanov Decl. ¶ 3(e)). *Second*, when Plaintiffs submitted payment information for their memberships, they each clicked on a box next to the phrase "I ACCEPT TERMS AND CONDITIONS OF THE MEMBERSHIP AGREEMENT" that was hyperlinked to the Membership Agreement. (*Id.* at ¶ 10). Kirsanov testifies — based on his personal knowledge as the person responsible for the development, implementation, and maintenance of the membership registration process of JetSmarter's software application — that Plaintiffs would not have been able to become JetSmarter members if they had not clicked the box indicating their acceptance of JetSmarter's Membership Agreement. (*See id.* at ¶¶ 1, 10, 12). His declaration also includes screenshots of Plaintiffs' membership invoices for 2016 with Plaintiffs' names, contact information, payment amount, and checkmarks in such boxes (*see id.* at Ex. 4, 5, 6), as well as J. Worthington's and Massimo Tassan-Solet's membership invoices for the renewal of their JetSmarter memberships in 2018 (*see id.* at Ex. 13-14). Plaintiffs' clicks next to JetSmarter's Membership Agreement suffice to establish that Plaintiffs assented to the arbitration provision contained therein. *See Meyer,* 868 F.3d at 75 ("Courts around the country

10

have recognized that an electronic click can suffice to signify the acceptance of a contract[.]" (internal quotations and alterations omitted)).

Undeterred by this evidence, Plaintiffs contend that the making of the arbitration agreement is in issue, and therefore the Court must hold a trial to determine whether Plaintiffs agreed to arbitration. (*See* Pl. Opp. 10-13). To support this argument, Plaintiffs cast aspersions on the documentary evidence provided by Defendants. (*See* Pl. Opp. 10-12). Plaintiffs argue, for instance, that the Membership Agreements attached to the Kirsanov Declaration have not been properly authenticated because they are not date-stamped and do not contain the JetSmarter logo. (*Id.* at 11). Plaintiffs also argue that Kirsanov is speculating, without evidence and based only on "experience," that Plaintiffs "must have" agreed to JetSmarter's terms since they paid JetSmarter. (*Id.* at 11-12).[3] Significantly, however, Plaintiffs have submitted *no* evidence to the

---

[3] Plaintiffs also contend that "Kirsanov's Declaration should be disregarded in its entirety because it consists of hearsay and it does not fall within any of the hearsay exceptions." (Pl. Opp. 12 n.5). However, hearsay evidence is admissible at the summary judgment stage if the materials would otherwise be admissible at trial. *See* Santos v. *Murdock*, 243 F.3d 681, 683 (2d Cir. 2001) ("Affidavits submitted to defeat summary judgment must be admissible themselves or must contain evidence that will be presented in an admissible form at trial."). The evidence presented via the Kirsanov Declaration, including the steps a user takes to register on the JetSmarter app and information on the JetSmarter registration process, and JetSmarter's records of Plaintiffs' membership invoices is relevant to whether Plaintiffs agreed to JetSmarter's Membership Agreements. *See* Fed. R. Evid. 401. Further, the declaration is made based on Kirsanov's own knowledge as the Chief Technology Officer of JetSmarter. (*See* Kirsanov Decl. ¶¶ 1-2). The screenshots of the JetSmarter registration process and Plaintiffs' Membership Invoices are also admissible evidence that the Court can consider on a motion to compel. *See, e.g., Starke* v. *SquareTrade, Inc.*, 913 F.3d 279, 282-85 (2d Cir. 2019) (relying on screenshot of amazon.com website and emails in denying motion to compel arbitration); *Meyer* v. *Uber Techs., Inc.*, 868 F.3d 66, 76 (2d Cir. 2017) (relying on screenshot of Uber app in granting motion to compel arbitration).

Court to rebut or otherwise contradict the facts contained in the Kirsanov Declaration and its attached exhibits.

Plaintiffs' arguments regarding the type and format of Defendants' evidence do not create a genuine issue of material fact as to whether the parties entered into an arbitration agreement. *Cf. Interbras Cayman Co.* v. *Orient Victory Shipping Co., S.A.*, 663 F.2d 4, 7 (2d Cir. 1981) ("To make a genuine issue entitling the plaintiff to a trial by jury [under 9 U.S.C. § 4], an unequivocal denial that the agreement had been made was needed, and some evidence should have been produced to substantiate the denial.").[4] When presented with arbitration agreements in contracts formed online between companies and their customers, courts routinely rely on affidavits and declarations (similar to the Kirsanov Declaration) and screenshots (similar to Exhibits 1, 4-6, and 13-14 of that Declaration) submitted by the company's employee describing and depicting how the customer manifested assent to the company's arbitration provision. In *Selden* v. *Airbnb, Inc.*, No. 16 Civ. 933 (CRC), 2016 WL 6476934, at *2-5 (D.D.C. Nov. 1, 2016), for example, in granting a motion to compel arbitration, the court relied on a declaration from an Airbnb employee that explained the sign-up process and attached a rendering of the sign-up page as it would have appeared to the plaintiff at the

---

[4] Plaintiffs themselves cite the summary judgment standard, relevant on a motion to compel arbitration, and explicitly acknowledge that "if the moving party adequately supports its motion, the burden shifts to the nonmoving party to 'go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" (Pl. Opp. 6 (quoting *Celotex* v. *Catrett*, 477 U.S. 317, 324 (1986))).

time he signed up.  Similarly, in *Bernardino* v. *Barnes & Noble Booksellers, Inc.*, No. 17 Civ. 4570 (LAK) (KHP), 2017 WL 7309893, at *6-8 (S.D.N.Y. Nov. 20, 2017), *report and recommendation adopted as modified*, 2018 WL 671258 (S.D.N.Y. Jan. 31, 2018), the courts relied on a declaration of a Barnes & Noble employee that attached screenshots of images of the Barnes & Noble website obtained from the company's internal quality assurance server to determine that the parties entered into an agreement to arbitrate.

In *Cordas* v. *Uber Technologies, Inc.*, 228 F. Supp. 3d 985, 989 (N.D. Cal. 2017), the court relied on the declaration of an Uber engineer that described the rider sign-up and registration process and on screenshots of the Uber app in determining whether the plaintiff had agreed to Uber's terms and conditions. As relevant here, the court in *Cordas* rejected the plaintiff's argument that the declaration was insufficient to support Uber's motion to compel arbitration because it was hearsay, speculation, and lacked authentication.  *Id.*  The court explained that Cordas "offer[ed] no testimony or evidence regarding what he *did* see on his screen, and offer[ed] no evidence to rebut [the Uber engineer's] reasoned declaration other than his own conclusory allegations that he never received notice of the terms and conditions and that [the Uber engineer's] declaration is false and inadequate." *Id.* at 990 (emphasis in original).  Instead, the court held that the Uber engineer's declaration was based on personal knowledge and on records kept by Uber in the ordinary course of business, and was therefore sufficient to find, as a matter of law, that Cordas had entered into an arbitration agreement with Uber.  *Id.* at 989-90.

Most notably, in many of the other cases brought against JetSmarter, courts have granted JetSmarter's motions to compel based on records very similar to the one before this Court. *See, e.g., Davimos* v. *JetSmarter, Inc.*, Civ. Action No. 18-15144 (MAS) (DEA), 2019 WL 3082643, at *4 (D.N.J. July 15, 2019) (relying on declaration of Mikhail Kirsanov to conclude that "Plaintiff, via a clickwrap agreement, assented to the terms of the Membership Agreement, which included the subject arbitration provision"); *Porcelli* v. *Jetsmarter, Inc.*, No. 19 Civ. 2537 (PAE), 2019 WL 2371896, at *4 (S.D.N.Y. June 5, 2019) (granting JetSmarter's motion to compel arbitration based on declaration of Mikhail Kirsanov almost identical to the one submitted in this case); *Bachewicz* v. *JetSmarter, Inc.*, No. 18 Civ. 62570-BLOOM/Valle, 2019 WL 1900332, at *2-3 (S.D. Fla. Apr. 29, 2019) (compelling arbitration where "Defendants describe in detail the steps that each potential member must complete on JetSmarter's mobile application before one can become a JetSmarter member" and "Plaintiff [did] not dispute that she was a JetSmarter member or the existence of a contract with JetSmarter"); *Laine* v. *JetSmarter, Inc.*, No. 18 Civ. 62969-BLOOM/Valle, 2019 WL 1900339, at *2-3 (S.D. Fla. Apr. 29, 2019) (concluding that JetSmarter had met its burden to compel arbitration given defendants' description of the steps each potential member completes on the JetSmarter mobile application before one can become a JetSmarter member, including the toggling of an acceptance button, despite plaintiffs' argument that the Membership Agreement did not contain a date or name to which plaintiffs could be tied); *Abraham* v. *JetSmarter Inc.*, No. 18 Civ. 1647 (WED), 2019 WL

1459056, at *5 (E.D. Wis. Apr. 2, 2019) ("The court concludes that the Abrahams assented to the terms of the Membership Agreement, including the arbitration provision, when they clicked the 'toggle button' next to the phrase, 'I ACCEPT TERMS AND CONDITIONS OF THE MEMBERSHIP AGREEMENT.'"). The Court joins this chorus, and finds similarly that Defendants have met their burden to show that Plaintiffs formed an arbitration agreement with Defendants.

### 2. Arbitrability Must Be Decided by the Arbitrator

The Court next turns to the issue of arbitrability, i.e., whether the claims at issue in this case fall within the scope of the Membership Agreement. Under the FAA, threshold questions of arbitrability are presumptively resolved by the court and not referred to the arbitrator. *Doctor's Assocs.*, 934 F.3d at 250. However, parties may contractually agree to delegate such threshold questions to the arbitrator. *See Henry Schein, Inc.* v. *Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019); *Rent-A-Center, W., Inc.* v. *Jackson*, 561 U.S. 63, 68-69 (2010). When the parties clearly and unmistakably agree to arbitrate threshold questions, the courts must respect the parties' decision as embodied in the contract. *See Henry Schein,* 139 S. Ct. at 528 ("This Court has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." (quoting *First Options of Chicago, Inc.* v. *Kaplan*, 541 U.S. 938, 944 (1995))).

15

The arbitration provision at issue here expressly delegates the issue of arbitrability to an arbitrator. The arbitration provisions of the 2017 and 2018 Membership Agreements explicitly state that

> *[a]ny claim or dispute* between the parties … whether related to this Agreement, any of the Terms and Conditions or the relationship or rights or obligations contemplated herein, *including the validity of this clause,* shall be resolved exclusively by binding arbitration by the American Arbitration Association by a sole arbitrator under the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes then in effect[.]

(*See* Kirsanov Decl., Ex. 11-12 (emphases added)). This provision indicates that the parties clearly and unmistakably delegated the matter of arbitrability to the arbitrator.[5] Thus, Plaintiffs must be compelled to bring all of their claims in arbitration.[6]

---

[5] The arbitration provision's reference to the AAA Commercial Rules of Arbitration provides an additional reason to conclude that the parties agreed that arbitrability issues would be decided by the arbitrator. AAA Commercial Rule 7(a) provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AAA Commercial R. 7(a). Where parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to arbitration. *See, e.g., Schneider* v. *Kingdom of Thailand,* 688 F.3d 68, 72-73 (2d Cir. 2012) (holding incorporation of UNCITRAL Arbitration Rules constituted clear and unmistakable evidence of intent to delegate arbitrability question to arbitrator); *Contec Corp.* v. *Remote Sol., Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005) (holding that arbitration provision stating that "controversy shall be determined by arbitration … in accordance with the Commercial Arbitration Rules of the American Arbitration Association" evidenced a clear and unmistakable intent to delegate arbitrability issues to arbitrator); *Shaw Group Inc.* v. *Triplefine Int'l Corp.*, 322 F.3d 115, 122 (2d Cir. 2003) (holding reference to International Chamber of Commerce rules constituted clear and unmistakable evidence of intent to delegate arbitrability issues to arbitrator); *PaineWebber Inc.* v. *Bybyk*, 81 F.3d 1193, 1202 (2d Cir. 1996) (holding incorporation of NASD rules constituted clear and unmistakable evidence of intent to delegate arbitrability issues to arbitrator).

[6] Plaintiffs argue that the section of the Membership Agreements titled "CONSTRUCTION" creates ambiguity in the contract regarding the delegation of arbitrability issues to the arbitrator. (*See* Pl. Opp. 14-15). The provision states that:

### 3. Challenges to the Enforceability of the Membership Agreement Are Determined by the Arbitrator

Finally, Plaintiffs argue that even if they did agree to the terms of the Membership Agreements, they should not be compelled to arbitrate because those agreements are unenforceable as unconscionable and illusory. However, "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." *Buckeye Check Cashing, Inc.* v. *Cardegna*, 546 U.S. 440, 445 (2006). A party's challenge to a contract as a whole, or to a provision of the contract other than the arbitration provision, does not prevent a court from enforcing a specific agreement to arbitrate. *Rent-A-Center*, 561 U.S. at 70. It is only when the party resisting arbitration challenges the validity of the arbitration clause itself that the Court must resolve such challenge before compelling arbitration. *See Buckeye*, 546 U.S. at 445-46. When the party raises challenges to the contract generally, the court must enforce the arbitration provision, leaving any challenge to the validity of the agreement as a whole for the arbitrator. *See Rent-A-Center*, 561 U.S. at 72-75; *Preston* v. *Ferrer*, 552 U.S. 346, 353 (2008) ("[A]ttacks on the validity of an

---

> If any provision of this Agreement is declared by an arbitrator or a court of competent jurisdiction to be invalid, illegal, or unenforceable, such provision shall be limited or eliminated to the minimum extent necessary so that this Agreement should otherwise remain in full force and effect.

(Kirsanov Decl., Ex. 7 at 11; Ex. 8 at 11; Ex. 9 at 11; Ex. 10 at 12; Ex. 11 at 10-11; Ex. 12 at 10-11). This separate provision concerns the construction of the Membership Agreement as a whole. It does not limit or otherwise impact the arbitration provision, which clearly and unmistakably delegates arbitrability issues to the arbitrator.

entire contract, as distinct from attacks aimed at the arbitration clause, are within the arbitrator's ken.").

While Plaintiffs title their arguments as challenges to the arbitration provision specifically (*see* Pl. Opp. 16, 19), the arguments they make regarding unconscionability and illusoriness pertain to the Membership Agreements as a whole. Plaintiffs argue that the Membership Agreements were unconscionable because: (i) they were offered to Plaintiffs on a take-it-or-leave-it basis (*see id.* at 22); (ii) JetSmarter did not return Plaintiffs' funds when Plaintiffs sought to cancel their memberships (*see id.* at 21); and (iii) JetSmarter unilaterally changed the membership program, stripping Plaintiffs of the benefits of their bargain (*see id.* at 22-23). Plaintiffs also argue that the provisions in the Membership Agreements allowing JetSmarter to modify the terms of such agreements unilaterally rendered these agreements illusory. (*See id.* at 17-18). All of these arguments are challenges to the enforceability of the Membership Agreements *in toto*. Plaintiffs do not make any discrete challenges to the validity of the arbitration provisions specifically. Plaintiffs may, therefore, raise such arguments in arbitration — but may not use these arguments to avoid arbitration in the first instance.

### 4. The Case Is Stayed

Lastly, the Court must decide whether to dismiss or stay the action. When all claims have been referred to arbitration and a stay is requested, the Court must grant the stay. *See Katz* v. *Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015). However, when a stay is not requested, the district court has

discretion in determining whether to stay or dismiss the case pending arbitration. *See Benzemann* v. *Citibank N.A.*, 622 F. App'x 16, 18 (2d Cir. 2015) (summary order) (concluding that district court was not required to enter a stay where parties did not request one); *accord Castellanos* v. *Raymours Furniture Co., Inc.*, 291 F. Supp. 3d 294, 302 (E.D.N.Y. 2018) ("Although defendant's motion requests that the Court dismiss the action, the Court concludes that a stay is appropriate.").

Here, neither party has requested a stay, and Defendants have explicitly asked for this action to be dismissed. (*See* Def. Br. 9 ("[T]his action should be dismissed and binding arbitration compelled."); *id.* at 20 ("[T]his Court should dismiss the pending action and compel arbitration[.]"); Def. Reply 11 ("Based upon the foregoing, it is respectfully requested that the Court dismiss this action and compel arbitration.")).[7] However, Defendants' only argument in support of the Court dismissing, rather than staying, the matter consists of a single footnote providing in its entirety: "While the FAA requires a stay of any action subject to a valid arbitration agreement, this Court has the discretion to dismiss this action if all the issues raised are arbitrable." (Def. Br. 9 n.3 (citing *Germosen* v. *ABM Indus. Corp.*, No. 13 Civ. 1978 (ER), 2014 WL 4211347, at *7 (S.D.N.Y. Aug. 26, 2014))). Defendants' bare assertion fails to persuade the

---

[7] In Defendants' opening brief, they requested that if the Court denied their motion to compel arbitration, it stay this action pending the resolution of the class action arbitration. (*See* Def. Br. 18-20). However, after Defendants filed their opening brief, Plaintiffs opted out of the class arbitration. (*See* Plaintiffs' Response to Defendants' First Notice of Supplemental Authority (Dkt. #27) at 2). Defendants concede that their request for a stay pending resolution of the class arbitration would be moot once Plaintiffs opted out of the class settlement. (*See* Def. Reply 11 n.5).

19

Court that it should dismiss, instead of stay, the matter, particularly where courts in other JetSmarter cases have recognized that a stay promotes the expeditious resolution of the dispute. *See, e.g.*, *Scaba* v. *JetSmarter, Inc.*, Civil Action No. 18-17262 (MAS) (DEA), 2019 WL 3947510, at *7 (D.N.J. Aug. 21, 2019); *Davimos* v. *JetSmarter, Inc.*, Civil Action No. 18-15144 (MAS) (DEA), 2019 WL 3082643, at *5 (D.N.J. July 15, 2019); *Koons* v. *JetSmarter, Inc.*, Civil Action No. 18-16723 (MAS) (DEA), 2019 WL 3082687, at *6 (D.N.J. July 15, 2019). The Court therefore denies Defendants' motion to dismiss and stays the matter pending the completion of arbitration pursuant to Section 3 of the FAA.

## CONCLUSION

For the reasons stated in this Opinion, Defendants' motion to compel arbitration is GRANTED. The Clerk of Court is ORDERED to terminate the motion at docket entry 16 and to stay the case. The Parties are ordered to update the Court on or before March 27, 2020, regarding the status of any arbitration.

SO ORDERED.

Dated: October 7, 2019
New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge